**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

MASSACHUSETTS EYE & EAR INFIRMARY, )
                                         )
            Plaintiff,             )
                                           )
vs.                               )     Case No. 1:05-cv-11229
                                           )
EUGENE B. CASEY FOUNDATION and        )
THOMAS F. REILLY, as he is the Attorney General )
of The Commonwealth of Massachusetts,       )
                                           )
           Defendants.            )

## EUGENE B. CASEY FOUNDATION'S MEMORANDUM OF REASONS IN SUPPORT OF MOTION TO DISMISS

            The Eugene B. Casey Foundation ("the Foundation") hereby moves that the Court

dismiss both Counts of the Complaint filed by the Massachusetts Eye and Ear Infirmary

("MEEI"). Those Counts reflect an effort by MEEI to keep funds donated by the Foundation

that were to be spent on a Program that no longer exists at MEEI (Count I), and to extract an

additional $1,000,000.00 from the Foundation for the same Program that no longer exists at

MEEI (Count II). The Foundation requests that the Court exercise its discretion to dismiss Count

I of the Complaint for a Declaratory Judgment because it states issues best addressed by the

Foundation's Counterclaims; and moves that the Court dismiss Count II of MEEI's Complaint

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

            First, the Court should exercise its discretion under the Declaratory Judgment Act

to dismiss Count I of MEEI's Complaint. In that Count, MEEI seeks a Declaratory Judgment

that it may keep $1,000,000.00 that was donated by the Foundation, even though the Program for

which the money was paid – the Voice Restoration Research Program – no longer exists at

MEEI. MEEI's declaratory judgment action is not the best vehicle to resolve this issue because

the Foundation has, concurrently with the filing of this Motion to Dismiss, filed an Answer and

Counterclair s that affirmatively set forth the basis for the Foundation's entitlement to a return of the funds. A; explained below, see infra at 18-20, courts have substantial discretion to decline jurisdiction over declaratory judgment actions particularly where, as here, the natural plaintiff's counterclaim (here, the Foundation's), best sets forth the legal basis for the dispute. Because MEEI's Declaratory Judgment Count is not the best vehicle for resolving the Foundation's entitlement to a return of the funds, the Court should exercise its discretion to dismiss Count I.

Second, the Court should dismiss MEEI's Count II for Damages for failure to state a claim. Count II seeks to extract from the Foundation the payment of $1,000,000.00 that was originally pledged to fund the "Voice Restoration Research Program." Not only has MEEI failed to allege that it would apply the $1,000,000.00 in question to the specified Program, but it could not amend its Complaint to do so. The Voice Restoration Research Program was administered and directed by Dr. Steven Zeitels, one of the nation's leading laryngologists, and the Program in question ceased to exist at MEEI when he moved from MEEI to Massachusetts General Hospital. Further, the Foundation has subsequently paid well in excess of the additional $1,000,000.00 in question to fund the ongoing Voice Restoration Research Program and the work of Dr. Zeitels at Massachusetts General Hospital. It is astonishing that MEEI would sue the Foundation for payment in the face of the Foundation's continued generous commitment to the very research it originally pledged to support. The claim is also legally baseless. Drawing all favorable inferences from the allegations in MEEI's Complaint, MEEI has failed to allege any valid cause of action for damages under Massachusetts law. Count II should be dismissed.

## Background

The Foundation is a 501(c)(3) charitable organization located in Gaithersburg, Maryland. See Compl. ¶ 2.[1] In November 2002, Mrs. Betty Casey, who is the President of the Foundation, was contacted by Dr. Steven Zeitels, one of the nation's leading laryngologists and a pioneer in the field of voice restoration and the treatment of vocal fold scarring. Dr. Zeitels practiced medicine at MEEI, see Compl. ¶ 11, where, in November of 2002, he was also the director, administrator, and principal co-investigator of a program called the Voice Restoration Research Program. Dr. Zeitels contacted the Foundation to solicit funding for the Voice Restoration Research Program. The Foundation was favorably impressed by the work that Dr. Zeitels was doing, and agreed to make a gift of $2,000,000.00 to MEEI to support Dr. Zeitels' Voice Restoration Research Program. The Foundation ultimately signed a schedule of payments document which the MEEI countersigned, outlining a series of seven payments from December 1, 2002 through July 1, 2004.[2] See Compl. ¶¶ 7, 8; Exh. 1 (herein, the "schedule of payments"). When MEEI returned the schedule of payments to the Foundation, it did so under a cover letter identifying the payments as "for the Voice Restoration Research Program under the direction of Steven Zeitels, M.D." See Exh. A to the Motion to Dismiss (herein, "Exh. A").

The Foundation made payments to MEEI in the amount of $500,000, $250,000, and $250,000 by checks dated December 1, 2002, April 1, 2003, and July 1, 2003. See Compl. ¶ 9. The Foundation did not make a payment on October 1, 2003 or any payments to MEEI thereafter. See Compl. ¶ 33. In May of 2004, Dr. Zeitels announced that he would be moving

---

[1] Because the Foundation is moving for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the facts alleged in MEEI's Complaint are assumed to be true only for the purposes of this Motion.

[2] The schedule of payments was labeled a "Contract," but was not a contract under the law because it was not supported by consideration and it never resulted in reasonable and detrimental reliance by MEEI. As discussed further below in Section I.A, the Court need not accept the allegation that a document labeled a Contract actually is a "contract" in the legal sense.

- 3 -

his clinical practice from MEEI to Massachusetts General Hospital. See Compl. ¶¶ 11, 18; Exh. 3; Exh. 4. Despite requests from the Foundation, MEEI refused to return the unspent remainder of the funding provided "to do the Voice Restoration Research Program" to the Foundation or to transfer the funds to another non-profit organization where they could be used to continue funding Dr. Zeitels' work. See Compl. ¶¶ 18-20; Exh. 3; Exh. 4. MEEI also alleges that "Gifts have been solicited by MEEI from donors other than the Foundation in reliance upon the understanding that the Foundation had agreed to contribute $2,000,000.00 to MEEI for voice restoration research." Compl. ¶ 35.

MEEI's Complaint contains two Counts: Count I (Declaratory Judgment) alleges that the Foundation made a gift of the funds already sent to MEEI, and that it is not entitled to a return of those funds or any part thereof; Count II (Damages) does not identify a cause of action by name but alleges that MEEI is entitled to an additional $1,000,000.00 from the Foundation. In evaluating these two Counts, the Foundation takes them in reverse order, below.

## Argument

Count II of MEEI's Complaint should be dismissed with prejudice because no claim has been stated on the facts alleged. Count II is simply titled "Damages." Reading the Complaint generously, Count II appears to be a claim for enforcement of a charitable pledge or some similar action, which is akin to a breach of contract action. Although MEEI no longer has a program called the Voice Restoration Research Program (the Program for which the money was pledged in the original schedule of payments), MEEI has nevertheless opted to sue the Foundation to "enforce" the payment of an additional $1,000,000.00.

MEEI has not pled allegations sufficient to show entitlement to additional funds from the Foundation – nor could it. Under Massachusetts law, a charitable pledge is not enforceable unless it has the same support as a contract – either consideration or reliance. The

- 4 -

schedule of payments document (Exh. 1) at issue had neither. As an independent reason to grant the Motion to Dismiss, MEEI has failed to state a claim because the funds identified in the schedule of payments were plainly designated for a specific purpose: "to do the Voice Restoration Research Program" under the direction of Steven Zeitels, M.D. Any pledge cannot be enforced for a different purpose – i.e., to fund voice restoration generally – now that the Program identified by the parties has moved in its entirety from MEEI to Massachusetts General Hospital. Because (1) there was no consideration or reliance, and (2) because MEEI has grossly distorted the plain language of the schedule of payments to concoct an ongoing obligation, Count II of MEEI's Complaint should be dismissed.

Count I, seeking a declaratory judgment, should be dismissed in light of the counterclaim filed by the Foundation. District courts have substantial discretion as to whether a declaratory judgment action may proceed. Because the Foundation is the injured party (or "natural plaintiff") as to MEEI's retention of the funds, the declaratory judgment mechanism is unnecessary and would unduly complicate resolution of the relevant issues. The Court therefore should exercise its discretion to dismiss Count I of MEEI's Complaint.

## I.     MEEI's Count II Claim for Damages Should Be Dismissed.

As set forth below, the allegations in MEEI's Complaint, taken as true, do not support any legally cognizable claim for damages. Count II therefore should be dismissed.

### A.     Standards for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

A Motion to Dismiss is granted where it appears that the plaintiff will not be able to prove any set of facts in support of its claims that would entitle it to relief. See Boxcar Media, LLC v. RedneckJunk, LLC, 345 F. Supp. 2d 76, 78 (D. Mass. 2004). In considering a Motion to Dismiss under Federal Rule 12(b)(6), the Court accepts the Complaint's allegations as true, including all reasonable inferences in favor of the plaintiff. See id. However, the Court need not

- 5 -

accept bald assertions, subjective characterizations, optimistic predictions, or problematic suppositions in considering the motion. See Eggert v. Merrimac Paper Co. Leveraged Employee Stock Ownership Plan & Trust, 311 F. Supp. 2d 245, 247 (D. Mass. 2004) (citations omitted). To deny a 12(b)(6) motion to dismiss, the plaintiff must state some theory in the complaint that is sufficient to state a cause of action in accordance with the law. See id. It is the plaintiff's burden to make sufficient factual allegations to survive a Rule 12(b)(6) motion, and there is no onus on the Court to "conjure up unpled allegations" on the plaintiff's behalf. See Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996) (Gorton, J.).

The Court is not obligated to accept as true any conclusions of law that are set forth in the Complaint. For example, MEEI's assertions about tax consequences (¶ 15); or its analysis of policy ramifications (¶ 16), cannot be characterized as "facts" to be taken as true for purposes of the Motion to Dismiss. Similarly, the Court need not accept conclusory allegations that there in fact was a "contract" in the legal sense of the term (¶ 7), or that the schedule of payments document (Exh. 1) gave rise to a legally enforceable "obligation" to make certain payments (¶ 34). See Doyle v. Hasbro, Inc., 103 F.3d 186, 194-95 (1st Cir. 1996) (explaining that it is inadequate simply to allege that the facts show a breach of a contractual relationship). Rather than baldly asserting the breach of a contractual obligation, MEEI must actually allege with "substantial certainty" the facts showing the existence of the contract and the legal effect of those facts, see id. at 194, which, as discussed below, MEEI fails to do.

While generally the court should not look outside the four corners of the Complaint in considering the relevant facts for a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[a] narrow exception exists for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." See MHI Shipbuilding, LLC v. Nat'l Fire

- 6 -

Ins. Co. of Hartford, 286 B.R. 16, 20 (D. Mass. 2002) (internal citations and quotations omitted) (considering several documents without converting the motion into a motion for summary judgment). Thus, the Court may consider the actual language of the schedule of payments, which MEEI attached to its Complaint as Exhibit 1. Likewise, if an incomplete exhibit has been submitted by the plaintiff, the Court may consider the complete document as supplemented by the defendant – in this case, the transmittal page that MEEI submitted with the signed schedule of payments to the Foundation, attached hereto as Exhibit A. See Clorox Co. Puerto Rico v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000) (explaining that where a document is integral to a plaintiff's complaint, the Court may consider the complete document so the plaintiff does not state a claim by selective omission); see also Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998) (citations omitted).[3]

## B.    Charitable Pledges in Massachusetts

MEEI's Complaint appears to claim damages for breach of a charitable pledge. Under Massachusetts law, a charitable subscription or pledge is defined as "an oral or written promise to do certain acts or to give real or personal property to a charity or for a charitable purpose." See King v. Trs. of Boston Univ., 647 N.E.2d 1196, 1199 (Mass. 1995). An enforceable charitable pledge is akin to a contract. See id. at 1204 (affirming jury instructions comparing a claim for a charitable pledge to a contract action). For a charitable pledge to be enforced, the plaintiff must show that there has been a promise supported by consideration or reliance. See id. at 1199. In the absence of either of those things, a charitable pledge is simply a gratuity, and is unenforceable as such. See Frankina v. First Nat'l Bank of Boston, 801 F. Supp.

---

[3] The Foundation believes that the plain language Exhibit 1 by itself, without being completed by the letter under which it was conveyed by MEEI to the Foundation, is sufficiently clear that the Court need not consider Exhibit A – the Foundation attaches Exhibit A, however, because it may make resolution of the issues even more straightforward.

- 7 -

875, 886 (D. Mass. 1992) (dismissing a breach of contract action where the promise was simply gratuitous), aff'd, 991 F.2d 786 (1st Cir. 1993). Massachusetts has explicitly refused to dispense with the requirements of consideration or reasonable reliance in the context of charitable gifts or pledges. See King, 647 N.E.2d. at 1199 n.4 (explaining that Massachusetts has declined to adopt Section 90(2) of the Restatement (Second) of Contracts, which would dispense with those requirements). Massachusetts also has stated that a court should not strain to find consideration or reliance simply because a case involves a gift made for a worthy or charitable purpose. See id. (citing Jordan v. Mount Sinai Hosp. of Greater Miami, Inc., 276 So. 2d 102 (Fla. Dist. Ct. App. 1973), aff'd, 290 So. 2d 484 (Fla. 1984)).

        In determining the scope of the promise or pledge, courts look to the language used in the g ft or trust instrument and the clear intent of the donor. See id. at 1200-01. Where the donative intent is clear, courts will give effect to it. See id.[4] As is clear from cases in the context of contract interpretation generally, "[t]he interpretation of the contract itself generally presents a question of law for the court." See Berkowitz v. President & Fellows of Harvard College, 789 N.E.2d 575, 581 (Mass. App. Ct. 2003) (citing Suffolk Constr. Co. v. Lanco Scaffolding Co., 716 N.E.2d 130 (Mass. 1999)). To the extent that a gift instrument is ambiguous, courts place heavy emphasis on the intent of the donor in looking outside the four corners of the pledge document. See Dodge v. Anna Jaques Hosp., 17 N.E.2d 308, 310-11 (Mass. 1938) (focusing on the donor's limited purpose in making the donation); King, 647 N.E.2d at 1200-01 (emphasizing that the intent of the donor is "[a] primary concern in enforcing charitable subscriptions").

---

[4] Despite an irrelevant suggestion to the contrary in the Complaint, it is perfectly permissible to donate funds for a particular purpose. See King, 647 N.E.2d at 1202 ("donors may give personal property on conditions they choose").

- 8 -

## C.    MEEI Misconstrues the Scope of the Pledge – There Has Been No Breach of the Foundation's Pledge.

Count II should be dismissed because the pledge made by the Foundation cannot be read as a promise to pay money for any purpose other than to fund a very specific Program – the Voice Restoration Research Program. A close review of the Complaint reveals that MEEI does not once allege that it still has a program called the Voice Restoration Research Program, the Program for which the payments were to be made. This void is further highlighted by MEEI's allegation that – despite the passage of a year since Dr. Zeitels' departure – it is "in the process of" appointing someone to direct the Division of Laryngology at MEEI. See Compl. ¶ 21 (emphasis added). The parties unquestionably understood that the Program to be funded by the Foundation's gift was the Voice Restoration Research Program directed and administered by Dr. Steven Zeitels. See Exh. A. MEEI is attempting to enforce a promise that was never made by demanding that the Foundation give it money to apply to voice restoration research generally, rather than the specific Program identified in the schedule of payments, as the verbal sleight-of-hand in the Complaint illustrates.[5]

The language in the schedule of payments is clear. See Exh. 1. MEEI has acknowledged and affirmatively alleged that the schedule of payments set forth by the Foundation was "to do the Voice Restoration Research Program." See Compl. ¶ 8; Exh. 1. Notably, the schedule of payments does not indicate an intent to support voice restoration generally, but rather was pledged to do a specific Program, as the use of capital letters to reference the Program clearly demonstrates. See Jacobs v. United States Fid. & Guar. Co., 627 N.E.2d 463, 464 (Mass. 1994) ("[A]n interpretation which gives a reasonable meaning to all of

---

[5] See Compl. ¶¶ 17 ("MEEI has made expenditures from the fund in support of voice restoration research"); 21 (funds will be used to support "voice restoration research"); 23 (MEEI will spend the money on "voice restoration research"); 35 (referencing "voice restoration research").

- 9 -

the provisions of a contract is to be preferred [over] one which leaves [terms or provisions]

useless or inexplicable.") (quoting Sherman v. Employers' Liab. Assurance Corp., 178 N.E.2d

864 (Mass. 1961)). It is obvious from the choice of words and from the capitalization, if they are

to have any meaning, that the schedule of payments was not intended to benefit a more general

category of research.[6] If there were any doubt from the language of the schedule of payments

what Program the donated funds were to fund, MEEI's letter transmitting the schedule of

payments makes clear that MEEI knew exactly what Program was being discussed – the Program

under the direction of Dr. Zeitels. See Exh. A.

        If a charitable pledge is designated for a particular purpose, and the particular

purpose fails, is abandoned, or is no longer ongoing, then the donee or promisee no longer has

any right to enforce payment. See Rutherford Coll. v. Payne, 184 S.E. 827, 829 (N.C. 1936);

Commercial Travelers' Home Ass'n v. McNamara, 95 A.D. 1, 4, 88 N.Y.S. 443 (N.Y. App. Div.

1904) ("The law is not so absurd as to hold one to his subscription or promise to give to a

charitable or public enterprise after the enterprise has been abandoned."). In Rutherford College,

for example, donors gave money to fund an endowment for Christian education at Rutherford

College. The trustees of Rutherford College apparently then gave the funding for that college

away to another college, but sued one of the donors to recover the balance of a charitable pledge.

The North Carolina Supreme Court reversed and ordered a new trial, explaining that the jury

---

[6] MEEI alleges that there was not, at the time the schedule of payments was signed, a "Voice Restoration Research Program *separate from MEEI*." Compl. ¶ 12 (emphasis added). There is no legal relevance to whether the Voice Restoration Research Program was "separate from MEEI" or not. MEEI does not dispute that there was a Program at MEEI called the Voice Restoration Research Program. MEEI notably fails to allege that the Voice Restoration Research Program is ongoing at MEEI (and it cannot truthfully do so). The allegations in ¶¶ 13-14, stating that the gift was not conditioned on the continued employment of Dr. Zeitels, similarly are red herrings. The issue is whether MEEI can apply the funds to do the Voice Restoration Research Program referenced in the schedule of payments.

should have been instructed that if Rutherford College could no longer use the endowment fund for "Christian education" – the purpose for which the gift had been made, then the College, as plaintiff, should take nothing. See Rutherford College, 184 S.E. at 830.

Massachusetts case law also supports this rule – for example, when the purpose of a charitable gift designated for a particular use fails, the recipient no longer retains the right to keep those funds, but holds them in a resulting trust to be returned to the donor. See Dodge, 17 N.E.2d at 310-11. In Dodge, the donor had provided funds for a hospital specifically to fund a tuberculosis ward. Subsequently, the hospital ceased funding the tuberculosis ward, and applied certain of its donations toward general improvements and equipment for the hospital. The Massachusetts Supreme Judicial Court held that by failing to put the gift toward the use that the donor intended, as had been made reasonably apparent to the hospital, the hospital forfeited the right to keep the donated funds and instead held them in a resulting trust to be returned to the donor. See id. ("The limited purpose for which the plaintiff made his donation having been abandoned, it is held by the defendant upon a resulting trust in his favor"). It logically follows that if a recipient of a charitable donation cannot *retain* funds donated for a particular purpose after that purpose has failed, the recipient certainly may not sue to obtain additional funds that were to be applied toward a specific program that no longer exists.

MEEI's Complaint does not support a breach of contract claim or claim to enforce a charitable pledge because the claim is premised on the breach of a promise that, under the plain language of the schedule of payments, was never made. MEEI acknowledges in its allegations that the Foundation's payments were made "to do the Voice Restoration Research Program." Compl. ¶ 8. MEEI does not even attempt to allege that there is still a Voice Restoration Research Program at MEEI. Although MEEI has alleged generally that it still does work in the area of voice restoration, see Compl. ¶¶ 17, 21, 23, MEEI has not alleged that the specific

Program that the Foundation funded still exists, or that the Foundation signed the schedule of payments with a broader donative for the funds to be used for anything other than the Voice Restoration Research Program. MEEI cannot claim any interest in funds that were specified to be used for a particular Program if it cannot allege that the Program still exists at MEEI. Put another way, the plain language of the schedule of payments document cannot be read as a pledge to make payments to do anything other than fund the Voice Restoration Research Program. The Court should find that as a matter of law, any promise by the Foundation to make a gift to MEEI was for the limited purpose of funding "the Voice Restoration Research Program." In the absence of an allegation that that specific Program as contemplated by the Foundation is ongoing, the pledge cannot be enforced.

### D.      The Charitable Schedule of Payments Is Not Enforceable Because There Was No Consideration and There Has Been No Reasonable Reliance.

Even if the Court were to read the pledge as promising to pay money for "voice restoration" generally rather than for the "Voice Restoration Research Program," Massachusetts still requires a showing of either consideration or reliance for a charitable pledge or subscription to be moved from the category of unenforceable gratuity to the category of enforceable obligation. See King, 647 N.E.2d at 1199-1200; see also Congregation Kadimah Toras-Moshe v. DeLeo, 540 N.E.2d 691, 693 (Mass. 1989) (explaining that typically charitable pledges are enforced only where there is "substantial consideration or reliance."). MEEI has failed to make allegations sufficient to show consideration or reliance such that the Foundation's gift would become enforceable.

### 1.      The Complaint Does Not State a Claim that the Charitable Pledge is Enforceable on a Consideration Theory.

Whatever MEEI's theory under Count II may be, it is not that the Foundation's gift to do the Voice Restoration Research Program was supported by consideration. This is

- 12 -

evident because the Complaint repeatedly describes the payments made pursuant to the schedule of payments as "gifts," which is by definition at odds with a consideration theory. See, e.g., DeJong v. Comm'r, 36 T.C. 896, 899 (1961) ("A gift is generally defined as a voluntary transfer of property by the owner to another without consideration therefor."), aff'd, 309 F.2d 373 (9th Cir. 1962). The Complaint does not allege or describe any consideration, and MEEI will not be able to amend the Complaint to do so – the pledge at issue in this case was wholly gratuitous.

### 2.    The Complaint Does Not State a Claim on a Reliance Theory.

"Reliance" may be the theory that MEEI is pursuing to extract $1,000,000.00 from the Foundation. The only paragraph of the Complaint hinting at reliance by MEEI is ¶ 35, which states that, "[g]ifts have been solicited by MEEI from donors other than the Foundation in reliance upon the understanding that the Foundation had agreed to contribute $2,000,000 to MEEI for voice restoration." This paragraph is inadequate to satisfy the elements of a claim for enforcement on a reliance theory.

Where reliance is to substitute for consideration in the enforcement of a promise, the reliance must be reasonable and detrimental. See Rooney v. Paul D. Osborne Desk Co., 645 N.E.2d 50, 51 (Mass. App. Ct. 1995). Massachusetts has made clear the importance of showing actual reliance by expressly declining to adopt Section 90 of the Restatement (Second) of Contracts, which dispenses with the requirement of reliance in some circumstances. See King, 647 N.E.2d at 1199 n.4.

Further, although the Massachusetts Supreme Judicial Court has declined to apply the label of "promissory estoppel," finding that label to be more confusing than helpful, see Loranger Constr. Corp. v. E.F. Hauserman Co., 384 N.E.2d 176, 179 (Mass. 1978), the lower court of appeals in Loranger observed that in practice, courts confronted with questions of whether to enforce charitable gifts on a reliance theory apply the elements of what other

- 13 -

jurisdictions label "promissory estoppel." See Loranger Constr. Corp. v. E.F. Hauserman Co., 374 N.E.2d 306, 309 (Mass. App. Ct. 1978) (explaining that Massachusetts "has in effect applied the theory of promissory estoppel in cases involving charitable subscriptions"); see also Northrup v. Brigham, 826 N.E.2d 239, 244 (Mass. App. Ct. 2005) (explaining that the Loranger Supreme Judicial Court opinion rejected the label but not the concept of promissory estoppel). The elements of promissory estoppel are: (1) a promisor makes a promise which he should reasonably expect to induce action or forebearance of a definite and substantial character; (2) the promise does induce such action or forebearance; and (3) injustice can be avoided only by enforcement of the promise. See Loranger, 374 N.E.2d at 309; Ross v. Raytheon Co., No. CIV. A. 99-5530, 2001 WL 1455863, at *5 (Mass. Super. Nov. 1, 2001). MEEI has failed to allege facts sufficient to state a claim on this theory.

### a.    There Has Been No Detrimental Reliance by MEEI

MEEI's claim for Damages should be dismissed because it has not alleged facts sufficient to show detrimental reliance on the gift provided by the Foundation. Paragraph 35, referencing other fundraising in "reliance" on the Foundation's pledge, is legally insufficient to establish any detriment or harm incurred by MEEI. In fact, MEEI seems to be suggesting that it has financially benefited by referencing the Foundation's initial schedule of payments. There is no detrimental reliance where the promisee makes a profit as a result of the alleged promise. See PDC-El Paso Meriden, LLC v. Alstom Power, Inc., No. 99-6016, 2004 WL 1588201, at *15 (Mass. Super. June 14, 2004) (finding no detrimental reliance where a power project was not completed but the promisee instead sold the power plant for a profit).

Further, the Massachusetts Supreme Judicial Court has expressly repudiated the suggestion that merely collecting other donations or subscriptions as interdependent on one another is a detrimental reliance sufficient to render each subscription an enforceable contract.

- 14 -

See Congregation Kadimah Toras-Moshe, 540 N.E.2d at 693 & n.3 (explaining that several early Massachusetts subscription cases have been misread to require virtually no detrimental reliance). As explained in Congregation Kadimah Toras-Moshe, the only cases in which interdependent subscriptions or donations have been held to create binding consideration or reliance involve situations where specific financial duties to raise money were a condition of the donation in the first place. See, e.g., Ladies' Collegiate Inst. v. French, 82 Mass. 196 (Mass. 1860) (holding that a pledge was enforceable where it was expressly conditioned on a certain amount of money being raised by a certain date, and that condition was met). In contrast, MEEI has not alleged that the gift by the Foundation was ever conditioned on MEEI gathering a certain level of gifts from other donors. Because MEEI has failed to allege that it relied to its detriment on the alleged pledge from the Foundation, Count II must be dismissed.

### b. There Has Been No **Reasonable** Reliance by MEEI.

Count II also should be dismissed for the independent reason that ¶ 35 does not allege reasonable reliance on any pledge or promise made by the Foundation. First, the reliance alleged by MEEI is not reasonable because ¶ 35 suggests that MEEI solicited gifts in reliance on a pledge to fund voice restoration generally – which is not a reasonable way to read the schedule of payments document, as discussed above. Second, any allegation of reasonable reliance would have to include an allegation that the reliance was undertaken prior to the Foundation's alleged non-payment of the remaining funds on the schedule of payments. Any reliance subsequent to October 1, 2003 would be unreasonable as a matter of law, since MEEI was on notice as of that date that the October 1, 2003 payment designated by the schedule of payments had not been made. See Cataldo Ambulance Serv., Inc. v. City of Chelsea, 688 N.E.2d 959, 963 (Mass. 1998) (explaining that it is important to look to the timing of when reliance occurred to determine its

- 15 -

reasonableness); Adler v. Schultz, No. 970515, 1999 WL 1324284, at \*5 (Mass. Super. Feb. 24, 1999) (a court may find claimed reliance to be unreasonable as a matter of law).[7]

### c. MEEI Cannot Allege that Injustice Would Result if the Foundation Does Not Pay MEEI $1,000,000.

Finally, MEEI's Complaint does not allege that any injustice would result if the schedule of payments were not enforced, and thus is deficient. See Lewis v. Plymouth Rock Assurance Corp., No. 1293, 2000 WL 1880268, at \*2 (Mass. App. Div. Dec. 20, 2000) (affirming dismissal of a "damages" claim where the three elements of promissory estoppel, including that an injustice could only be avoided by enforcement, had not been alleged). No amendment to the Complaint could remedy this defect. MEEI will not possibly be able to identify any injustice, since the Foundation has paid the funds to the Institute of Laryngology and Voice Restoration to do the Voice Restoration Research Program under the direction of Dr. Zeitels, which is precisely the purpose for which the funds were to be supplied in the first place.

### E. MEEI Fails To Allege the Remaining Elements of a Breach of Contract Action.

Superimposed on the criteria for sufficient reliance, as described above, the Massachusetts Supreme Judicial Court has also explained that when reliance is invoked to obtain a recovery, "the party bringing such action must prove all the necessary elements of a contract other than consideration." See Rhode Island Hosp. Trust Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1179 (Mass. 1995). Thus, to complete its claim that any pledge made by the Foundation must be enforced under a theory of either consideration or reliance, MEEI would have to additionally plead: (1) that it was ready, willing and able to perform; (2) that defendant's breach has prevented it from performing; and (3) that MEEI was damaged. See Doyle, 103 F.2d at 194

---

[7] Other donors would undoubtedly be surprised if they learned that MEEI had solicited them for donations on the basis of a gift that was, in MEEI's opinion, not current.

(listing the e ements of a breach of contract action). Of these additional elements, MEEI has failed to adequately allege points (1) and (2).

With respect to point (1), MEEI alleges in ¶ 23 of its Complaint that it was "ready, willing and able to apply the full $2,000,000.00 amount of the Foundation's gift to the conduct of voice restoration research." That, of course, is not what the documents said. The documents expressly stated that MEEI was to apply the funds "to do the Voice Restoration Research Program," under the direction of Dr. Zeitels. MEEI has not and cannot allege that it is ready, willing, and able to perform in that manner because it no longer has the Program in question. To the extent MEEI is attempting to proceed under a reliance theory, MEEI has failed to state a claim because it does not allege it could perform under what it claims is a contract.

With respect to point (2), MEEI has failed to make any allegation that the Foundation's cessation of payments *caused* MEEI's inability "to do the Voice Restoration Research Program." MEEI will not be able to amend its Complaint to make this allegation because its inability to do the Voice Restoration Research Program stemmed from the fact that the Program's creator and director went to a new hospital and took the Program with him.

In light of the foregoing, Count II of MEEI's Complaint should be dismissed without leave to amend.

## II.    The Court Should Decline to Exercise Jurisdiction Over MEEI's Count I for a Declaratory Judgment in Light of the Foundation's Counterclaims.

MEEI's Count I for a Declaratory Judgment is wholly unnecessary in light of the Foundation's Counterclaims and should be dismissed. In Count I, MEEI seeks a declaration that it has dominion and control over the funds already paid by the Foundation to do the Voice Restoration Research Program, and that it may keep them. The Foundation's counterclaims for a return of the money obviate the need for MEEI's Declaratory Judgment Count.

- 17 -

The First Circuit has explained that "[t]he Declaratory Judgment Act is 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant'; courts have broad discretion to decline to enter a declaratory judgment." See DeNovellis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997); C. Van Der Lely N.V. v. F.lli Maschio S.n.c., 561 F Supp. 16, 25 (S.D. Ohio 1982) ("A federal court is never under compulsion to exercise its federal declaratory judgment jurisdiction."). In determining whether declaratory relief should be availing, the court should consider whether such relief would comport with "practicality and wise judicial administration." See DeNovellis, 124 F.3d at 313. Courts consistently express concern about exercising jurisdiction over a declaratory judgment action where doing so would subvert a "natural plaintiff's" ability to shape its own claims – a would-be defendant cannot wrest control of the natural plaintiff's cause of action simply by engaging in a race to the courthouse. See Hudson County News Co. v. Metro Assocs., Inc., 141 F.R.D. 386, 392 (D. Mass. 1991) ("The declaratory judgment remedy *is not a tactical device* whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse.") (quotation omitted) (emphasis in original); Casualty Indem. Exch. v. High Croft Enters., Inc., 714 F. Supp. 1190, 1193 (S.D. Fla. 1989) (a declaratory judgment action should be dismissed where there is no purpose in filing it other than "procedural fencing"). Where a declaratory judgment action will serve no useful purpose, it may properly be dismissed. See Good Lad Co. v. B&W Assocs., No. CIV. A. 98-6612, 1999 WL 79662, at *2 (E.D. Pa. Feb. 5, 1999) (dismissing a declaratory judgment action where the same party's counterclaim could just as easily resolve the dispute).

In keeping with the above principles, the Court should dismiss MEEI's claim for a declaratory judgment now that the Foundation has filed counterclaims and entered the case as the "natural plaintiff." It is apparent that MEEI filed Count I only because the Foundation had

- 18 -

previously said it planned to sue MEEI for the funds that MEEI is improperly holding. See Compl. ¶ 22 (stating that the Foundation had threatened suit by May 13, 2005). MEEI filed suit two days earlier, on May 11, 2005, not only to obtain an additional $1,000,000.00, but also in a transparent effort to preempt the Foundation's claim for a return of the money already paid – this is a clear example of "procedural fencing." Now that the Foundation has filed its affirmative claims for relief against MEEI, it would only unduly complicate the issues if Count I were not dismissed, since four out of the five paragraphs in MEEI's Count I do not even join issue with the actual controversy set forth in the Foundation's Counterclaims. See Compl. ¶¶ 26-29.[8] No purpose would be served by continuing the declaratory judgment action stated in Count I.

Because MEEI's Count I for a Declaratory Judgment is unnecessary and does not comprehensively address the controversy outlined by the Foundation's counterclaims, the Court should exercise its discretion to dismiss that Count so that the Foundation may proceed as the natural plaintiff. It would not prejudice MEEI in any way to do so.

## Conclusion

MEEI's Complaint should be dismissed. Count II should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). MEEI's allegations with respect to that Count are facially deficient in a number of respects – not only is MEEI attempting to enforce a different promise than the one the Foundation made, but MEEI cannot show any consideration or legally sufficient reliance such that any pledge by the Foundation would be enforceable. MEEI cannot successfully amend its Complaint on Count II because the plain language of the schedule of payments makes clear it would have to allege the ongoing existence of the Voice Restoration

---

[8] Specifically, the Foundation's counterclaims focus on whether the purpose of the gift made by the Foundation has failed, not whether there was a gift in the first place.

Research Program as understood by the parties – there simply is no longer a Voice Restoration Research Program at MEEI.

Count I should be dismissed pursuant to the Court's discretion to decline jurisdiction over declaratory judgment actions. The Foundation has now filed a Counterclaim that renders Count I unnecessary. Count I serves only to confuse the issues.

Dated:  June 22, 2005.

Respectfully submitted,

By: _Barbara Hamelburg_

Barbara Hamelburg, Esq.
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210-2600
(617) 832-1000

Lynda Schuler, Esq.
Ellen E. Oberwetter, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for the Eugene B. Casey Foundation*

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE
DOCUMENT WAS SERVED UPON THE ATTORNEY
RECORD FOR EACH OTHER PARTY BY MAIL-HAND
6/22/05.

**Massachusetts
Eye and Ear
Infirmary**

RESEARCH ADMINISTRATION

December 2, 2002

Betty Brown Casey
Chairman/President
Eugene B. Casey Foundation
800 South Frederick Avenue, Suite 100
Gaithersburg, Maryland 20877

Dear Ms. Casey:

As you requested, I am enclosing a fully executed contract for the Voice Restoration
Research Program under the direction of Steven Zeitels, M.D.

The Infirmary is most grateful to you for this very generous contribution and is
appreciative of your good wishes for the success of the program.

Sincerely,

Elayn G. Byron, CRA
Director
Office of Research Administration

enclosure

243 Charles Street
Boston, Massachusetts 02114
617-573-4080