UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASSACHUSETTS EYE & EAR INFIRMARY | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:05-cv-11229-NMG |
| v. | ) ) ) | |
| EUGENE B. CASEY FOUNDATION and THOMAS F. REILLY, as he is the Attorney General of The Commonwealth of Massachusetts, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPPOSITION OF PLAINTIFF MASSACHUSETTS EYE & EAR INFIRMARY TO DEFENDANT'S MOTION TO DISMISS

This Opposition is submitted by the plaintiff Massachusetts Eye & Ear Infirmary

("MEEI") in opposition to Eugene B. Casey Foundation's Motion to Dismiss ("Defendant's

Motion"). For the reasons set forth below, Defendant's Motion is unsupported in fact and in law

and must be denied.

### A.    LEGAL STANDARD

The essence of Defendant's Motion is directed to Count II of the Complaint, purportedly

pursuant to Fed. R. Civ. P. 12(b)(6).[1] The prerequisites for such a motion are well-established.

First, as determined nearly a half century ago in *Conley* v. *Gibson*, 355 U.S. 41, 45-46

(1957), a Rule 12(b)(6) movant must show "beyond doubt that the plaintiff can prove no set of

facts in support of his claim." See also *Wagner* v. *Devine*, 122 F.3d 53, 55 (1st Cir. 1997), cert.

---

[1] Defendant's Motion also seeks dismissal of Count I through exercise of the Court's discretion under the Declaratory Judgment Act. For the reasons set forth herein at pages 12-13, this aspect of Defendant's Motion is meritless.

denied, 522 U.S. 1090 (1998) (case may be dismissed for failure to state a claim only if on facts alleged plaintiff may not recover under any viable theory).

Second, and especially in light of the Federal Rules' standard of "notice pleading", see *Swierkiewicz* v. *Sorema, N.A.*, 534 U.S. 506, 511 (2002), Rule 12(b)(6) dismissals are disfavored. See, e.g., *United States Abatement* v. *Mobil Exploration & Producing*, 39 F.3d 556, 559 (5th Cir. 1994); *Johnsrud* v. *Carter*, 620 F.2d 29, 33 (3rd Cir. 1980). Courts allowing such motions ordinarily allow plaintiff leave to amend. See, e.g., *Laporte Construction Company* v. *Bayshore National Bank*, 805 F.2d 1254, 1256 (5th Cir. 1986); *Day* v. *Fallon Community Health Plan, Inc.*, 917 F. Supp. 72, 79 (D. Mass 1996).

Third, allegations set forth in the Complaint must be accepted as true. *Hartford Fire Ins. Co.* v. *California*, 509 U.S. 764, 770 (1993); *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). A defendant may not attempt to rebut or refute factual allegations, or introduce new facts, on a Rule 12(b)(6) Motion to Dismiss.

Finally, in deciding a Rule 12(b)(6) motion, all reasonable inferences must be drawn in plaintiff's favor. See, e.g., *In re Sofamor Danek Group, Inc.* 123 F.3d 394, 400 (6th Cir. 1997); *Sanner* v. *Chicago Bd. of Trade*, 62 F.3d 918, 925 (7th Cir. 1995).

Applying these standards to the Complaint herein, dismissal pursuant to Rule 12(b)(6) is plainly unwarranted.

## B.    THE COMPLAINT

At page 4 of its Memorandum of Reasons in Support of Motion to Dismiss ("Defendant's Memorandum"), the Eugene B. Casey Foundation ("the Foundation") professes confusion (based on the use of the word "damages" in conjunction with Count II, to describe the relief requested) as to the nature of this claim. As discussed below, Count II obviously is based upon a contract and on contract theories of recovery.

The essential facts as set forth in the Complaint are as follows. First, MEEI and the Foundation entered into a Contract, a copy of which is Exhibit 1 to the Complaint. Complaint, ¶ 7. Under the Contract, MEEI undertook to use certain promised payments in the conduct of its Voice Restoration Research Program, and to make periodic reports to the Foundation regarding the work performed. The Contract is silent with respect to the components, expenditures, research tasks, and other specific elements of the Program. The Contract likewise is silent regarding any role to be performed by Dr. Steven Zeitels in connection with the Program.[2] The Foundation made certain of the required payments under the Contract, Complaint ¶ 9, but has breached its obligation to deliver payments totaling $1 million with resulting damage to MEEI's Voice Restoration Research Program. Complaint, ¶¶ 33, 34. This more than adequately pleads a breach of contract claim under Massachusetts law. See *Loranger Construction Corporation* v. *The E.F. Hauserman Company*, 1 Mass. App. Ct. 801 (1973) (complaint sufficient if alleged agreement, breach and resultant damages).

Although not required to be pleaded, other facts set forth in the Complaint refute the thrust of Defendant's Motion. From before the time when Dr. Zeitels became interested in the subject, MEEI has been a pre-eminent institution in the conduct of research on voice restoration. Its Voice Laboratory was established without Dr. Zeitels' input. Complaint, ¶ 12. In 1994, MEEI and Harvard Medical School established the Merriam-Montgomery Professorship in

---

[2] As its sole support for the essential premise of the Foundation's entire Motion -- that Dr. Zeitels was the alpha and omega of the Voice Restoration Research Program -- the Foundation attaches as Exhibit A to its Memorandum a transmittal letter dated December 2, 2002. The offer of this document and other representations of fact (at page 3 of Defendant's Memorandum) which are not part of the Complaint is improper on a Rule 12(b)(6) motion. See, e.g., *Lovelace* v. *Software Spectrum, Inc.*, 78 F.3d 1015, 1017-1018 (5th Cir. 1996). The "exception" offered to advance this document, that it is somehow "central to plaintiff's claim" or is "sufficiently referred to in the Complaint" (Defendant's Memorandum, page 6) is not applicable. On its face, at most the letter identifies Dr. Zeitels as the person directing a Voice Restoration Research Program at MEEI as of its date, December 2, 2002. A sophisticated Foundation like the defendant was and is aware that personnel at charitable organizations can and do change. Discovery will determine the number and extent of gifts made by the Foundation which, like this gift, contain no express restriction based on the continuing involvement of any individual.

-3-

Laryngology, based on the interest of a donor in voice restoration. Id. MEEI's credentials in the area of voice restoration, and capability to conduct a "voice restoration research program", both predate, and are independent of, Dr. Zeitels' service on its staff.

Charitable institutions like MEEI cannot cede to individual physicians exclusive power to control the availability of charitable assets given both legal and public policy constraints. Complaint, ¶¶ 15, 16. MEEI was never informed (Complaint, ¶ 13), and MEEI would not have agreed (Complaint, ¶ 14) that the Foundation's funding was conditioned upon Dr. Zeitels' continued service at MEEI.

MEEI can and will discharge any charitable limitation upon the Foundation's money, by using it to perform voice restoration research. Complaint, ¶ 21. MEEI can and will conduct a voice restoration research program consistent with the language of the contract, whether or not Dr. Zeitels is involved.

## C.    ADDITIONAL FACTS

Nothing in the law obligated MEEI to plead evidence regarding its understanding of the Voice Restoration Research Program, Dr. Zeitels' role in the Program, the specific elements of the Program, or its ability to conduct the Program with or without Dr. Zeitels. Nevertheless, at page 3 of Defendant's Memorandum, the Foundation offers as "facts" unverified and selective assertions about Dr. Zeitels, a transmittal letter under which the signed contract was returned, and the Foundation's alleged reasons for entering into the contract, none of which appear in the Complaint. Likewise, at page 16 of Defendant's Memorandum, the Foundation asserts that it has "paid the funds to the Institute of Laryngology and Voice Restoration to do the Voice Restoration Research Program under the direction of Dr. Zeitels, which is precisely the purpose for which the funds were to be supplied in the first place." While proffering such

-4-

unauthenticated "evidence" in support of a Rule 12(b)(6) motion is plainly improper, it is also misleading.

Numerous facts, both presently known to MEEI and which may be developed through discovery[3], more than establish that the Foundation cannot meet the "beyond doubt" standard required for Rule 12(b)(6) dismissal. Examples of facts not required to be pled under the rules of notice pleading, but which will support MEEI's claim, are as follows.

To begin, MEEI's Voice Restoration Research Program reflects MEEI's longstanding and ongoing commitment to voice restoration research. A "Program" as involving Dr. Zeitels cannot be viewed independently of MEEI. In 2000, by Board of Director vote, $100,000 was committed to establish a Voice Restoration Research Project. Following that vote, MEEI sought to identify donors who could support its voice restoration research. MEEI entered into a Collaborative Research Agreement with Massachusetts Institute of Technology in the late summer and early fall of 2002, underwriting research costs of $250,000, in furtherance of the voice restoration research. In addition, MEEI's Human Studies Committee, an Institutional Review Board (IRB) responsible for reviewing research protocols for the protection of patient subjects, reviewed and approved research protocols involving voice restoration research issues. Similar IRB review would be necessary for any further voice restoration research involving the use of human subjects.

MEEI understands that a proposal, budget and overview of a Voice Restoration Research Program were delivered to the Foundation in November, 2002. See attached Exhibit A (letter

---

[3] The facts that are set forth in this section of plaintiff's Opposition are presented in the nature of a counter-proffer. While certain of these facts are within the direct knowledge of MEEI, other facts will require discovery (a) from the defendant Foundation, (b) from Dr. Zeitels who is no longer under the Infirmary's authority and control, and (c) from the Institute of Laryngology and Voice Restoration, an entity which, the Foundation contends, is presently conducting a Voice Restoration Research Program. It would be wholly unwarranted for this Court to grant a Motion to Dismiss based on a defendant's conclusory assertions of "fact" before any discovery had been conducted.

-5-

dated November 21, 2002). The Foundation's moving papers make no mention of the proposal, budget or overview. These documents will provide evidence of what was discussed with the Foundation, MEEI's role in conducting the research, and MEEI's ability to carry it forward whether or not Dr. Zeitels continued as its Director of Laryngology.

Following the execution of the Contract between MEEI and the Foundation, MEEI entered into an extension of its Collaborative Research Agreement with Massachusetts Institute of Technology, committing an additional $250,000 of funding. MEEI also entered into a Collaborative Research Agreement with Massachusetts General Hospital. Each of these agreements was in implementation of the voice restoration research which the Foundation, in its Contract with MEEI, undertook to fund.

In establishing MEEI's continuing willingness and commitment to deliver any Program within the meaning of the Contract, MEEI is entitled to present to the fact-finder additional evidence of its longstanding preeminence in the field of vocal restoration, the breadth and depth of its experience, its resources to conduct this type of research, and its present and future ability to do so. This evidence will include the role of Dr. William Montgomery, the preeminent voice research specialist in the United States, in mentoring and training Dr. Zeitels, whose initial practice of otolaryngology had not focused upon voice restoration research.[4] MEEI likewise is entitled to demonstrate that it has not "abandoned" its commitment to voice restoration research or lost its ability to complete the Program.

---

[4] Dr. Montgomery was known internationally for his seminal contributions to management of voice and airway problems. He was the inventor and patent holder of several prostheses designed for use in improving airway and vocal function. It was in recognition of his innovation in the area of maintenance of airway and vocal rehabilitation that he was honored by one of his grateful patients with the Merriam-Montgomery Professorship in Otolaryngology in 1993. In addition to his numerous clinical contributions, Dr. Montgomery was an excellent teacher and personally taught a number of the current leaders in the field of otology and laryngology.

-6-

MEEI also is entitled to discover and offer evidence establishing that its resources and ability to complete any Voice Restoration Research Program exceed the resources of the so-called Institute of Laryngology and Voice Restoration ("Institute") through which the Foundation alleges (at page 16 of Defendant's Memorandum) it is funding such a Program. Attached hereto marked Exhibit B are documents pertinent to the Institute. From these documents, it would appear (1) the Institute is a vehicle created by Dr. Zeitels during the fall of 2003, while still associated with MEEI; (2) it is a Rhode Island entity with officers and directors who, other than Dr. Zeitels, do not have any evident expertise in voice restoration; (3) the Institute has no evident resources through which to conduct voice restoration research, other than Dr. Zeitels' own private office and patient base; and (4) the Institute has no evident track record in the conduct of such research, nor any IRB to provide protection to patients who are used as research subjects.[5] At a minimum, what the Institute is doing with Foundation money will be probative on the issue whether MEEI is capable of providing the same or superior voice restoration research work with the money the Foundation contracted to provide.

## D.    ARGUMENT

Reduced to its essentials, Defendant's Motion with respect to Count II is premised on two assertions -- that there is no contract between MEEI and the Foundation and that, if there were, MEEI has abandoned performance of its obligation to conduct Voice Restoration Research within the meaning of the contract. On the record before it, this Court could not properly and conclusively accept either proposition in the context of a 12(b)(6) motion to dismiss. MEEI asserts, however, that after the factual record is fully developed through discovery, it will prevail on both issues.

---

[5] While discovery will establish the particulars, it would appear that the Institute may be little more than a funding device established by Dr. Zeitels, in violation of his legal and ethical obligations to MEEI, to support his personal work.

-7-

1.    There is an enforceable contract between the Foundation and MEEI.[6] On its face the document attached as Exhibit 1 to plaintiff's Complaint is, and was intended by the parties to be, an enforceable contract. The document is headed "Contract"; contrary to the Foundation's attempt at revisionist history in its Memorandum, it is not named a "schedule of payments." The Foundation states that it was the preparer of the document. Counterclaims, ¶ 23. Therefore, were there any ambiguity as to the Foundation's intention to enter into a binding arrangement with MEEI, the ambiguity would be resolved against it. See, e.g., *Merrimack Valley Nat'l Bank* v. *Baird*, 372 Mass. 721 (1977); *Canam Steel Corp.* v. *Boden Construction Corp.*, 34 Mass. App. Ct. 943, 944 (1993). In addition, in subsequent correspondence the Foundation referred to the document as "our contractual agreement of November 27, 2002." See July 1, 2003 letter attached hereto marked Exhibit C.

At page 7 of Defendant's Memorandum, the Foundation asserts that its promise to pay must be supported by consideration or reliance. In fact, the Foundation's promise to make a series of payments totaling $2 million is supported by consideration and reliance by MEEI.

With respect to consideration, the 1989 decision of the Massachusetts Supreme Judicial Court in *Congregation Kadimah Toras-Moshe* v. *Robert A. DeLeo, Administrator*, 405 Mass. 365, 366 is instructive. In that case, the Court found no consideration ("no legal benefit to the promisor nor detriment to the promisee") in the context of an "oral gratuitous pledge." In so finding, both the Court and the Superior Court Judge below grounded their decisions on the lack of a writing and on two additional factors -- that there was "no indication as to how the money should be used" and no indication "what [the Congregation] was required to do if anything in

---

[6] Defendant's Memorandum asserts, at page 8, that the interpretation of a contract "generally presents a question of law for the Court." Massachusetts law is clear, however, that if there is conflicting evidence on the existence of a contract, ordinarily that issue is a question of fact for the jury. See, e.g., *Recupero* v. *New England Tel. & Tel. Co.*, 118 F.3d 820 (1st Cir. 1997); *David J. Tierney, Jr., Inc.* v. *T. Wellington Carpets, Inc.*, 8 Mass. App. Ct. 237, 239 (1979).

return for this promise." The contract between MEEI and the Foundation is in writing and

contained MEEI's undertaking to use the money in furthering its Voice Restoration Research

Program. There is no dispute that MEEI undertook to do so in return for the promise of a

predictable flow of funds from the Foundation.[7]

In the *Congregation Kadimah Toras-Moshe* decision, the Supreme Judicial Court

distinguished the facts before it from two cases involving the Trustees of Amherst Academy and

the Trustees of Farmington Academy, where a charitable party had incurred expense on the basis

of the defendant's subscription, and where subscribers to a written agreement were not allowed

to withdraw after execution or during the progress of work they themselves had set in motion.

The Court's favorable recognition of these decisions further supports a reading of *Congregation*

*Kadimah Toras-Moshe* which would find the written Contract in this case enforceable against the

Foundation.

A conclusion that the Infirmary's promise to use the funding for an express purpose is

sufficient consideration is reinforced by the fact of the Foundation's counterclaim in this case.

At ¶ 29 of the Counterclaim, the Foundation asserts that the Contract "required that [MEEI] use

those funds only" to do the Voice Restoration Research Program. That allegation, and the

Foundation's attempt to recover the unexpended funds previously delivered can only be

premised upon the assumption that there was a binding obligation upon MEEI, which is more

than sufficient consideration to support the Foundation's obligation to make the promised

payments. The Contract also obligated MEEI to deliver periodic progress reports; this is

additional consideration. See *King* v. *Trustees of Boston University*, 420 Mass. 52, 63 (1995)

---

[7] In addition, evidence will establish that the Foundation was publicly commemorated in connection with this work. The Supreme Judicial Court in *Congregation Kadimah Toras-Moshe* cited with approval a New York decision holding that a subscriber's promise became binding when the charity implicitly promised to commemorate the subscriber. Id. at 366.

-9-

(finding the indexing of certain papers delivered by Martin Luther King to Boston University to constitute reliance or consideration for his promise to transfer ownership of the papers to the University at a future date or at his death).[8]

In the *King* decision, the Supreme Judicial Court recognized "that the 'meeting of minds' between a donor and a charitable institution differs from the understanding we require in the context of enforceable arms-length commercial agreements. Charities depend on donations for their existence, whereas their donors may give personal property on conditions they choose, with or without imposing conditions or demanding consideration." *King* v. *Trustees of Boston University*, supra 420 Mass. at 61 (citation omitted). Therefore, while Massachusetts law may look upon charitable subscriptions as akin to conventional contracts, less "consideration" or "reliance" would appear necessary for a Court to make such agreements binding.

In addition to the consideration apparent on the face of the Contract, the Complaint alleges at least one type of reliance. Complaint, ¶ 35. As set forth above, however, MEEI took other steps in reliance upon the size and certainty of the payments which the Foundation undertook to make. These included (a) entering into, and extending, Collaborative Research Agreements respectively with Massachusetts General Hospital and Massachusetts Institute of Technology; and (b) providing space and other support to Dr. Zeitels to perform voice restoration research. For these and other reasons which will be developed as this case proceeds, MEEI's reliance is more than sufficient independently to support a finding of an enforceable contract, even were there no consideration.

2.    MEEI has not abandoned the Voice Restoration Research Program, and is better situated to complete the Program than the Institute. Through various iterations, none of them

---

[8] Massachusetts law is clear that Courts may not weigh and compare the adequacy of consideration; even consideration of slight value may be sufficient to make a contract enforceable. See *Graphic Arts Finishers, Inc.* v. *Boston Redevelopment Authority*, 357 Mass. 40, 43 (1970).

supported by allegations in the Complaint, the Defendant's Motion is premised on the
assumption that MEEI has "abandoned" its Voice Restoration Research Program, and that such a
Program "no longer exists" at MEEI. Defendant's Memorandum, page 11. The Foundation
further asserts (Defendant's Memorandum, page 16) that the Institute is conducting "the Voice
Restoration Research Program." Neither proposition can be resolved in the context of a
Rule 12(b)(6) motion; they can only be resolved on the basis of a fully-developed factual record,
including discovery into the activities and resources of the Institute.[9]

    As stated above, the Contract contains no enlightenment as to the components, construct,
elements, timing, or any other aspects of a Voice Restoration Research Program sufficient to
determine whether the Program presently "exists" at MEEI. The Foundation relies, improperly,
on a cover letter transmitting the executed Contract for the suggestion that the "Program" could
only "exist" or be performed "under the direction of Dr. Zeitels." On a fully developed record,
MEEI will demonstrate that such a contention is absolutely incorrect.

    Two issues, neither of which can be resolved on a Rule 12(b)(6) basis, will be the subject
of full factual development and discovery: (a) what was understood by the parties by the words
"Voice Restoration Research Program" as they appear in the Contract and (b) whether MEEI can
perform such a Program given Dr. Zeitels' departure.

    With respect to the first question, factual development and discovery directed to what
was meant by these four words will include (a) a review of the proposal, budget and overview
provided to the Foundation (see Exhibit A attached hereto) and other documents and testimonial
evidence from Foundation files and representatives regarding the Foundation's internal review
and approval leading up to the Contract; (b) how MEEI's Voice Restoration Research Program

---

[9] *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431 (1938), cited by the Foundation at page 11 of its Memorandum, is
inapposite. In *Dodge*, the Hospital had ceased funding a tuberculosis ward and intended to apply certain donations
toward general improvements and equipment for the Hospital. MEEI has not abandoned voice restoration research.

9756977_3

-11-

was conducted while Dr. Zeitels was associated with MEEI; and (c) discovery regarding what the Institute in fact is doing with the $1 million given to it by the Foundation.

From these and other sources of evidence directed to the meaning of the words Voice Restoration Research Program , MEEI has no doubt that it can establish its continuing ability to perform such a Program, and, indeed, its ability to exceed any voice restoration research which the Institute could deliver. As but one example, MEEI believes the evidence will establish that the Institute has no significant resources through which to perform clinical research -- that it has a limited and insufficient patient base, insufficient clinical facilities (e.g., operating rooms), and, most significantly, no Institutional Review Board to evaluate research protocols for the protection of human subjects.

Fairly read, the Complaint establishes MEEI's "readiness, willingness, and ability" to deliver anything encompassed within the four words "Voice Restoration Research Program." Complaint, ¶ 23. On a fully developed factual record, MEEI believes it can prove that proposition conclusively.

For each of the foregoing reasons, therefore, so much of Defendant's Motion as is premised on Rule 12(b)(6) against Count II of the Complaint is premature, dependent upon "evidence" and assertions outside the pleadings and improperly proffered, based upon mischaracterizations of law, and must be denied.

3.    MEEI's Count for Declaratory Judgment should not be dismissed. MEEI's position regarding so much of Defendant's Motion as would dismiss its declaratory judgment Count I can be succinctly stated. None of the cases cited by defendant on this issue involve a situation like this, where the issue has been fully joined (through MEEI's prayer for declaratory judgment and the Foundation's counterclaim thereto), in a forum selected by the Foundation

(through its Petition for Removal), and where the Court can afford full and complete relief.[10]

The criteria for determining whether a Court should exercise discretion to render a declaratory

judgment are (1) whether the judgment will serve a useful purpose in clarifying and settling legal

relations in issue and (2) whether the judgment will terminate and afford relief from the

uncertainty, insecurity and controversy giving rise to the proceeding. *Van Der Lely NV* v.

*Maschio*, 561 F. Supp. 16, 25 (S.D. Ohio 1982). The declaratory judgment sought by MEEI in

this case meets both of those criteria.

## E.    CONCLUSION

For each of the foregoing reasons, MEEI respectfully requests that this Court deny

Defendant's Motion in its entirety.

---

[10] For example, in *Hudson County News Company* v. *Metro Associates*, 141 F.R.D. 386 (D. Mass. 1992) the Court concluded that the federal declaratory judgment action should defer to a pending state court action, and that a decision in the federal action would not resolve the heart of the dispute. Id. at 392-393. Here, there is no pending state court action and declaratory judgment will further resolution of all issues in a single forum. Similarly, in *Casualty Indemnity Exchange* v. *High Croft Enterprises, Inc.*, 714 F. Supp. 1190 (S.D. Fla. 1989), the essential holding was that an insurance agent was an indispensable party the addition of whom would defeat diversity jurisdiction. The Court expressed disapproval of an attempt via a declaratory judgment action "to avoid the usual non-diverse situation of the insured's suing both the insurer and the insurance agent." Id. at 1193. Here, plaintiff did not seek improperly to create federal jurisdiction over an otherwise "non-diverse" action; indeed, it is defendant which has chosen to remove the case to federal court, an action which plaintiff has not challenged. Finally, in *DeNovellis* v. *Shalala*, 124 F.3d 298 (1st Cir. 1997), the court was clearly persuaded against exercising declaratory judgment jurisdiction by "the possibility of conducting a trial . . . assessing arguments and counterarguments as to what people intended by certain statements or actions, with no opportunity to award any relief to [plaintiff] that would remedy the harm he allegedly suffered." Id. at 314. The Court of Appeals held that the District Court's decision "to refrain from such a fruitless endeavor was within its discretionary power." The Foundation does not and cannot suggest that a decision on the declaratory judgment count, addressing the same issues as presented by the Foundation itself in its counterclaim, will not provide resolution to issues properly raised in this case.

F.    REQUEST FOR ORAL ARGUMENT

MEEI requests that the Motion and Opposition be set for Oral Argument pursuant to

Local Rule 7.1(d). MEEI further requests that the date for Oral Argument be discussed and

established at the Scheduling Conference to be conducted on August 5, 2005 in this case.

MASSACHUSETTS EYE & EAR INFIRMARY
By its attorneys,

John C. Kane, Jr. (BBO #257480)
Ropes & Gray LLP
One International Place
Boston, MA  02110-2624
(617) 951-7000
John.Kane@ropesgray.com

Dated:  July 6, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of
the above document was served upon the
attorney of record for each party by mail/by hand.

Date: 7/6/05

9756977_3

-14-

Exhibit A

 **Massachusetts Eye and Ear Infirmary**

RESEARCH ADMINISTRATION

November 21, 2002

Betty Brown Casey
President
Casey Management, Inc.
800 South Frederick Avenue, Suite 100
Gaithersburg, MD 20877

Dear Ms. Casey:

Steven Zeitels, M.D. has requested that I be in touch with you regarding funding for the Voice Restoration Research Program. I believe that Dr. Zeitels has shared with you the program overview and the budget of $2 million needed to support this work. A schedule of support for this project in order to provide a solid, stable financial infrastructure is as follows:

> $500,000 on December 1, 2002
> $250,000 on April 1, July 1, and October 1, 2003
> $250,000 on January 1, April 1, July 1, 2004

Massachusetts Eye and Ear Infirmary is extremely excited about this creative and ambitious undertaking by Dr. Zeitels and his collaborators. We believe it has the potential to make an immense contribution to medical science and perhaps change the medical discipline entirely! We also realize the potential benefit of improving the quality of health and life of those who suffer from vocal fold scarring which often occurs in premature infants, cancer patients and performers.

I would be delighted to discuss the financial aspects – or any other aspects – of this program with you in more detail. I can be reached by 617-573-3009 by phone or by e-mail at elayn_byron@meei.harvard.edu.

We hope that after reviewing the Voice Restoration Research Program proposal that the foundation will be able to provide the necessary funding. We greatly appreciate your consideration to this work and look forward to hearing from you.

Sincerely,

Elayn G. Byron, CRA
Director
Office of Research Administration

243 Charles Street
Boston, Massachusetts 02114
617-573-4080

RI CORPORATION INFOLINK

Exhibit B

☒ Rhode Island Secretary of State Website

Corporations Database

# Rhode Island Corporation Search:

Corporation
Status:           [Active ⌄]

Look In:          [Corporation Name ⌄]

Search Terms:     [                                          ]

Search Type:      Show Records with ALL of the above terms. ⌄  Click Here for help with Boolean
                  Searches

[Submit]  [Reset]

---

ANNUAL REPORT AUTO-FILL
Please Select the Year you are filing for:
2003: ⚲ (View in Browser) OR 🖫 (Save to PC)

2004: ⚲ OR 🖫

2005: ⚲ OR 🖫
(Note: You Need Adobe Reader Version 5 or above to create an auto-filled annual report, Click Here for
the free download)

---

For Frequently Asked Questions regarding our Annual Report Autofill function or PDF's, Click Here

---

## ID# 135686
## The Institute of Laryngology and Voice Restoration
**Purpose:** FURTHERING RESEARCH, CLINICAL PRACTICE AND EDCUATION IN
LARYNGOLOGY, VOICE DISORDERS AND RELATED DISCIPLINES

### General Information

**Status:** AC                      **Annual Report Image:**
**Charter: DNP**                    2003 Image Not Available
**Chapter: TITLE: 7-6**             2004 Annual
**State: RHODE ISLAND**             2005 Annual
**Duration: PERPETUAL**             **Help On Viewing Annual Reports**
**File Date: 10 /31 /2003**
**Effective Date:10/31/2003**       **Sic Code: --**
**Last Report Date: 06/08/2005**
                                    **Authorized Shares:**

---

**Name and Address of the Registered/Resident Agent**

RI CORPORATION INFOLINK

**Business Address** 

The Institute of Laryngology and
Voice Restoration
ONE BOWDOIN SQUARE,
11TH FLOOR
BOSTON, MA 02114-, USA

NORMAN G. ORODENKER, ESQ.
10 WEYBOSSET STREET, 10TH FLOOR
PROVIDENCE, RI02903- USA
Agent is active...Registered office is maintained

**Primary Officer/Director/Partner/Manager
Information**

**Mailing Information**

**Title:** PRESIDENT
JOHN L WARD
111 FOREST AVENUE
EVANSTON, IL60202-, USA

N/A

**Event Information**

Activity

Corporations Division
Office of the Secretary of State Matthew A. Brown
100 North Main St. '
First Floor
Providence, RI 02903
corporations@sec.state.ri.us
www.sec.state.ri.us

Business Hours:
M-F 8:30 am to 4:30 pm
Tel. (401) 222-3040
Fax. (401) 222-1309
Director: Sandra Williams



**STATE OF RHODE ISLAND**
**AND PROVIDENCE PLANTATIONS**
*Office of the Secretary of State*

*Matthew A. Brown, Secretary of State*
*Corporations Division*
*100 North Main Street, Providence, RI 02903-13*
*401.222.30*

# NON-PROFIT CORPORATION ANNUAL REPORT FOR THE YEAR __2004__

*Filing Period: June 1 – June 30*  ●  *Filing Fee: $20.00*

*(FORM MUST BE TYPED OR PRINTED IN BLACK)*

| 1. Corporate ID No. 135686 | 2. Name of Corporation The Institute of Laryngology and Voice Restoration | | |
|---|---|---|---|
| 3. State of Incorporation RHODE ISLAND | 4. Corporate address in Rhode Island -Street Address 10 Weybosset Street | City Providence | Zip 02903 |
| 5. Foreign corporation: Enter principal office address | City | State | Zip |

6. Brief Description of the character of the affairs which are actually conducted in Rhode Island

FURTHERING RESEARCH, CLINICAL PRACTICE AND EDCUATION IN LARYNGOLOGY, VOICE DISORDERS AND RELATED DISCIPLINES

**7. NAMES AND ADDRESSES OF THE OFFICERS** *("X" BOX FOR ATTACHMENT)* ☐ FILL IN SPACES BEFORE USING ATTACHMENTS

| President Name Steven Zeitels | | | Vice President Name Barry Merkin | | |
|---|---|---|---|---|---|
| Street Address 166 Beacon Street, #3 | | | Street Address Kellogg School of Management, 2001 Sheridan Rd | | |
| City Boston | State MA | Zip 02116 | City Evanston | State IL | Zip 60208 |
| Secretary Name Paki Papaioanu | | | Treasurer Name John L. Ward | | |
| Street Address 411A Highland Avenue, Suite 401 | | | Street Address Kellogg School of Management, 2001 Sheridan Rd | | |
| City Somerville | State MA | Zip 02144 | City Evanston | State IL | Zip 60208 |

**8. NAMES AND ADDRESSES OF THE DIRECTORS** *("X" BOX FOR ATTACHMENT)* ☐ FILL IN SPACES BEFORE USING ATTACHMENTS
    **THE NUMBER OF DIRECTORS OF A DOMESTIC (RHODE ISLAND) CORPORATION SHALL NOT BE LESS THAN THREE (3).R.I.G.L 7-6-23**

| Director Name Charles Brown | | | Director Name William Downing | | |
|---|---|---|---|---|---|
| Street Address 315 East 70th Street, Apt. 5G | | | Street Address 738 Market Street | | |
| City New York | State NY | Zip 10021 | City Akron | State OH | Zip 44303 |
| Director Name Barry Merkin | | | Director Name Paki Papaioanu | | |
| Street Address Kellogg School of Management, 2001 Sheridan Rd | | | Street Address 411A Highland Avenue, Suite 401 | | |
| City Evanston | State IL | Zip 60208 | City Evanston | State IL | Zip 60208 |

**9. REGISTERED AGENT IN RHODE ISLAND -DO NOT ALTER- Changes require filing of Form 641 -R.I.G.L 7-6-13 / 7-6-78**

| Agent Name Norman G. Orodenker | Address | |
|---|---|---|
| Address 10 Weybosset Street | City Providence | Zip 02903 |

*This report must be signed in ink by either the President, Vice President, Secretary, Assistant Secretary, Treasurer, Receiver or Trustee*

1 3 5 6 8 6

*\*135686 DNP 06/24/04 02:21:14 PM\**

File Date 6/30/04

Check No. 5892 & M 36259

By:

FOR SECRETARY OF STATE USE ONLY

Under penalty of perjury, I declare and affirm that I have examined this report, including any accompanying schedules and statements, and that all statements contained herein are true and correct.

Signature of Officer                    Date 6/24/04

Norman G. Orodenker
*Print or Type Name of Officer*

**Assistant Secretary**
*Title of Officer*

Form 631 Rev. 6/02



**STATE OF RHODE ISLAND
AND PROVIDENCE PLANTATIONS**
*Office of the Secretary of State*

*Matthew A. Brown, Secretary of State*
*Corporations Division*
*100 North Main Street, Providence, RI 02903-1335*
*401.222.3040*

~~AMENDED~~ 2004

# NON-PROFIT CORPORATION ANNUAL REPORT FOR THE YEAR 2004

*Filing Period: June 1 – June 30 ● Filing Fee: $20.00*

*(FORM MUST BE TYPED OR PRINTED IN BLACK)*

| 1. Corporate ID No. | 2. Name of Corporation | | | |
|---|---|---|---|---|
| 135686 | The Institute of Laryngology and Voice Restoration | | | |
| 3. State of Incorporation | 4. Corporate address in Rhode Island –Street Address | | City | Zip |
| RHODE ISLAND | N/A | | | |

| 5. Foreign corporation: Enter principal office address | State | Zip |
|---|---|---|
| One Bowdoin Square, 11th Floor | City Boston | State MA | Zip 02114 |

6. Brief Description of the character of the affairs which are actually conducted in Rhode Island
FURTHERING RESEARCH, CLINICAL PRACTICE AND EDCUATION IN LARYNGOLOGY, VOICE DISORDERS AND RELATED DISCIPLINES

7. NAMES AND ADDRESSES OF THE OFFICERS ("X" BOX FOR ATTACHMENT) ☐ FILL IN SPACES BEFORE USING ATTACHMENTS

| President Name | | | Vice President Name | | |
|---|---|---|---|---|---|
| Steven Zeitels | | | Barry Merkin | | |
| Street Address | | | Street Address | | |
| 166 Beacon Street, #3 | | | Kellogg School of Management, 2001 Sheridan Rd | | |
| City Boston | State MA | Zip 02116 | City Evanston | State IL | Zip 60208 |
| Secretary Name | | | Treasurer Name | | |
| Paki Papaioanu | | | James R. Castellucci | | |
| Street Address | | | Street Address | | |
| 411A Highland Avenue, Suite 401 | | | Kellogg School of Management, 2001 Sheridan Rd | | |
| City Somerville | State MA | Zip 02144 | City Evanston | State IL | Zip 60208 |

8. NAMES AND ADDRESSES OF THE DIRECTORS ("X" BOX FOR ATTACHMENT) ☐ FILL IN SPACES BEFORE USING ATTACHMENTS
THE NUMBER OF DIRECTORS OF A DOMESTIC RHODE ISLAND CORPORATION SHALL NOT BE LESS THAN THREE (3) R.I.G.L 7-6-23

| Director Name | | | Director Name | | |
|---|---|---|---|---|---|
| Charles Brown | | | William Downing | | |
| Street Address | | | Street Address | | |
| 315 East 70th Street, Apt. 5G | | | 738 Market Street | | |
| City New York | State NY | Zip 10021 | City Akron | State OH | Zip 44303 |
| Director Name | | | Director Name | | |
| Barry Merkin | | | Paki Papaioanu | | |
| Street Address | | | Street Address | | |
| Kellogg School of Management, 2001 Sheridan Rd | | | 411A Highland Avenue, Suite 401 | | |
| City Evanston | State IL | Zip 60208 | City Evanston | State IL | Zip 60208 |

9. REGISTERED AGENT IN RHODE ISLAND DO NOT ALTER Changes require filing of Form 641 -R.I.G.L 7-6-13 / 7-6-78

| Agent Name | Address | |
|---|---|---|
| Norman G. Orodenker | | |
| Address | City | Zip |
| 10 Weybosset Street | Providence | 02903 |

*This report must be signed in ink by either the President, Vice President, Secretary, Assistant Secretary, Treasurer, Receiver or Trustee*

‖‖‖‖‖‖‖‖‖‖
1  3  5  6  8  6

*135686 DNP 06/24/04 12:07 PM*

File Date    JUL 2 0 2004

Check No. _____    By _____

By: _____

FOR SECRETARY OF STATE USE ONLY

Under penalty of perjury, I declare and affirm that I have examined this report, including any accompanying schedules and statements, and that all statements contained herein are true and correct.

_____ Signature of Officer    7/20/04    Date

Norman G. Orodenker
*Print or Type Name of Officer*

Assistant Secretary
*Title of Officer*

Form 631 Rev. 6/02



**STATE OF ~~RHODE ISLAND~~**
**AND PROVIDENCE PLANTATIONS**
*Office of the Secretary of State*

*Matthew A. Brown, Secretary of State*
*Corporations Division*
*100 North Main Street, Providence, RI 02903-1335*
*401.222.3040*

# NON-PROFIT CORPORATION ANNUAL REPORT FOR THE YEAR __2005__

*Filing Period: June 1 - June 30  ●  Filing Fee: $20.00*

*(FORM MUST BE TYPED OR PRINTED IN BLACK)*

| 1. Corporate ID No. | 2. Name of Corporation | | | | |
|---|---|---|---|---|---|
| 135686 | The Institute of Laryngology and Voice Restoration | | | | |
| 3. State of Incorporation | 4. Corporate address in Rhode Island -Street Address | | | City | Zip |
| RHODE ISLAND | | | | | |
| 5. Foreign corporation: Enter principal office address | | | City | State | Zip |
| ONE BOWDOIN SQUARE, 11TH FLOOR | | | BOSTON | MA | 02114- |

6. Brief Description of the character of the affairs which are actually conducted in Rhode Island

FURTHERING RESEARCH, CLINICAL PRACTICE AND EDCUATION IN LARYNGOLOGY, VOICE DISORDERS AND RELATED DISCIPLINES

**7. NAMES AND ADDRESSES OF THE OFFICERS ("X" BOX FOR ATTACHMENT) ☐ FILL IN SPACES BEFORE USING ATTACHMENTS**

| President Name | Vice President Name |
|---|---|
| John L. Ward | Barry Merkin |

| Street Address | Street Address |
|---|---|
| 111 Forest Avenue | 1555 Astor Street |

| City | State | Zip | City | State | Zip |
|---|---|---|---|---|---|
| Evanston | IL | 60202 | Chicago | IL | 60610 |

| Secretary Name | Treasurer Name |
|---|---|
| Paki Papaioanu | Eric Stromquist |

| Street Address | Street Address |
|---|---|
| 411A Highland Avenue, Suite 401 | 638 Bay Road |

| City | State | Zip | City | State | Zip |
|---|---|---|---|---|---|
| Somerville | MA | 02114 | Hamilton | MA | 01936 |

**8. NAMES AND ADDRESSES OF THE DIRECTORS ("X" BOX FOR ATTACHMENT) ☒ FILL IN SPACES BEFORE USING ATTACHMENTS**
**THE NUMBER OF DIRECTORS OF A DOMESTIC (RHODE ISLAND) CORPORATION SHALL NOT BE LESS THAN THREE (3).R.I.G.L 7-6-23**

| Director Name | Director Name |
|---|---|
| Charles Brown | John L. Ward |

| Street Address | Street Address |
|---|---|
| 315 East 70th Street, Apt. 5G | 111 Forest Avenue |

| City | State | Zip | City | State | Zip |
|---|---|---|---|---|---|
| New York | NY | 10021 | Evanston | IL | 60202 |

| Director Name | Director Name |
|---|---|
| Barry Merkin | Eric Stromquist |

| Street Address | Street Address |
|---|---|
| 111 Forest Avenue | 638 Bay Road |

| City | State | Zip | City | State | Zip |
|---|---|---|---|---|---|
| Evanston | IL | 60202 | Hamilton | MA | 01936 |

**9. REGISTERED AGENT IN RHODE ISLAND -DO NOT ALTER- Changes require filing of Form 641 -R.I.GL 7-6-13 / 7-6-78**

| Agent Name | Address |
|---|---|
| Norman G. Orodenker | |

| Address | City | Zip |
|---|---|---|
| 10 Weybosset Street | Providence | 02903 |

*This report must be signed in ink by either the President, Vice President, Secretary, Assistant Secretary, Treasurer, Receiver or Trustee*

1 3 5 6 8 6

| *135686 DNP 05/31/05 11:40:28 AM* |
|---|
| File Date _____ 6/9/05 |
| Check No. _____ 62448 |
| By: _____ |
| FOR SECRETARY OF STATE USE ONLY |

Under penalty of perjury, I declare and affirm that I have examined this report, including any accompanying schedules and statements, and that all statements contained herein are true and correct.

_____   5/31/05
Signature of Officer                     Date

Norman G. Orodenker
*Print or Type Name of Officer*

Assistant Secretary
*Title of Officer*

Form 631 Rev. 6/

Exhibit C

*Eugene B. Casey Foundation*
*800 South Frederick Avenue, Suite 100*
*Gaithersburg, Maryland 20877*
*(301) 948-4595*

July 1, 2003

Steven M. Zeitels, M.D.,F.A.C.S.
Department of Otology and Laryngology
Massachusetts Eye & Ear Infirmary
243 Charles Street
Boston, MA  02114

Dear Dr. Zeitels,

    The Trustees and I of the Eugene B. Casey Foundation are pleased
to send this check for Two Hundred Fifty Thousand Dollars ($250,000)
to fulfill our payment under our contractual agreement of November 27, 2002.

    We are looking forward to hearing from you about your research and
wish you much continued success.

                                    Sincerely,

                                    Mrs. Eugene B. Casey
                                    Chairman and President

Enclosure